**SECOND DIVISION
MCFADDEN, C. J.,
MILLER, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**July 2, 2020**

# In the Court of Appeals of Georgia

A20A0440. SCALES v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Rodger Scales was convicted of aggravated assault and other charges. He appeals, challenging the effectiveness of his trial counsel. He points to trial counsel's failure to object when a detective referred to pending warrants against Scales "from another state" and to herself as charged with pursuit of "major crime criminals," and to counsel's failure to object to references in the state's closing argument to Scales' right to appeal and to evidence of his guilt that was being withheld from the jury. But the evidence of Scales's guilt was overwhelming. And the state's fleeting reference to the appellate process did not pertain to Scales, nor did its closing argument refer to evidence of Scales' guilt being withheld from the jury. As for counsel's failure to object to allegedly improper character evidence and to the

state's reference in closing to facts not in evidence about the fairness of the state's plea bargaining decisions, there is no reasonable probability that, but for these alleged deficiencies, the trial would have resulted in a different outcome. So Scales has not shown both prejudice and deficient performance.

1. *Facts and procedural posture.*

Viewed in the light most favorable to the judgment, see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Angela Crawford and her fiancé Kelly Leggett were in their apartment watching television with Leggett's brother when they heard a light knock at the door. Leggett started opening the door, then immediately tried to close it. Leggett's brother locked the front door, and they heard a loud boom and then another boom. Crawford saw Leggett fall back, and then there were many shots fired into the house. Leggett's brother heard "somebody come up saying this is the wrong house." Then he heard someone else saying, "Oh, well."

Leggett died of a shotgun wound that perforated his brain. Crawford was sprayed with buckshot, and Leggett's brother was shot in the leg and in the side.

Scales was indicted, along with several co-defendants, and charged with malice murder, two counts of felony murder, six counts of aggravated assault, attempt to

2

commit armed robbery, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, criminal damage to property in the first degree, and conspiracy to commit armed robbery.

One of Scales' co-defendants, Cleveland Gary, pled guilty to manslaughter and two counts of aggravated assault and testified at Scales' trial. Cleveland Gary testified that he was at his sister's house, sitting on the porch with his little brother, his cousin, and Scales, when Daveka Wade called. Wade came over and joined them and told Cleveland Gary that he had something for them to do. Wade had a plan to rob two females of drugs he knew they had. The women knew Wade, so he could not be one of the robbers. Cleveland Gary testified that he had a Glock 17 and a .380. Scales said that he did not have a gun, so they got a shotgun for Scales from Cleveland Gary's sister's attic. Cleveland Gary testified that he drove Wade and Scales in his car to an apartment complex behind a car wash. They got out of the car, and Wade talked to some men who were standing outside. Wade asked the men about the location of the apartment. Cleveland Gary, Wade, and Scales got back in the car, and Wade told Cleveland Gary to pull around by the car wash. After they parked at the car wash, Cleveland Gary, Wade, and Scales walked through a hole in the fence to the apartment complex. While Wade waited a few apartments away, Cleveland Gary and

3

Scales walked to an apartment. Cleveland Gary testified that he was carrying the Glock 17 and Scales had a shotgun. Scales went to the front door, and Cleveland Gary was at the side of the building. Scales knocked on the front door, and Cleveland Gary heard someone open the door. Cleveland Gary saw Scales pushing the door open, but the person inside was able to get the door closed. Cleveland Gary testified that Scales then shot through the door. Cleveland Gary started shooting at the apartment. Scales and Cleveland Gary ran back to the car, and Wade jumped in the car with them. All three men went back to Cleveland Gary's sister's house. Cleveland Gary testified that after they got back, Scales said he thought "he had shot somebody." Cleveland Gary also testified that Scales said the shotgun hit him in the face, and that Scales' lip was swollen.

Cleveland Gary's brother, Tevin Gary, also testified at Scales' trial. Tevin Gary, who was also one of Scales' co-defendants, pled guilty to conspiracy to commit armed robbery and theft by receiving stolen property. Tevin Gary testified that he heard Scales "talking about how they were fixing to get ready to go do a robbery." Scales asked Tevin Gary if he could use Tevin Gary's pink and white .380 handgun. Tevin Gary let him borrow the handgun. Tevin Gary saw Cleveland Gary get a shotgun out of the attic and hand it to Scales. He also saw Scales take the shotgun to

4

the car. Tevin Gary testified that Cleveland Gary and Scales left the house with Wade and returned 30 to 45 minutes later. Tevin Gary testified that Scales said his lip was bleeding and that "he believed he had made a mistake and killed someone." Tevin Gary heard Cleveland Gary and Scales talking about having gone to the wrong house.

Cleveland Gary's former girlfriend testified that Scales told her that they went to rob someone but went to the wrong house. She testified that Scales said that after he knocked on the door, the man on the other side of the door was trying to close the door, and that Scales stood back a little bit and shot the shotgun. Scales told her that he killed the man. She testified that Scales was covering up his mouth when he was talking to her, and that he told her that when he fired the shotgun, it kicked back and hit him in the mouth.

A witness who was living with the Garys at the time of the robbery testified that Scales' mouth was bleeding, and she asked him what happened. Scales told her that he had tried to shoot the gun and it had knocked him in the mouth. Scales said that he knocked on the door, and the man opened the door, then shut it. Scales told her that he fired several shots and received the mouth injury from the shotgun kicking back when he fired it the second time. The witness testified that both Cleveland Gary and Scales said that Wade had sent them to the wrong house.

A police corporal testified that she interviewed Scales after he had been taken into custody; that Scales admitted hearing Cleveland Gary and Wade talking about robbing some girls of drugs that Wade had sold them earlier in the day; and that Scales admitted driving with Cleveland Gary to the car wash and dropping Wade off just before they got there. The corporal testified that Scales claimed that he had waited at the car wash, heard the gunshots, and when "they ran back with the guns, he drove away with them."

The jury convicted Scales of six counts of aggravated assault, attempting to commit armed robbery, conspiracy to commit armed robbery, and possession of a firearm by a convicted felon.

Scales filed a notice of appeal, then moved this Court to remand his case on the ground that he had not yet had the opportunity to raise claims that his trial counsel was ineffective. We granted his motion to remand. Scales then filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

2. *Ineffective assistance of counsel.*

Scales claims that his trial counsel was ineffective in failing to object to the state improperly placing his character in evidence and in failing to object to certain statements by the prosecutor in closing arguments. To prevail on these claims, Scales

6

"must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different." *Stodghill v. State*, 351 Ga. App. 744, 747 (3) (832 SE2d 891) (2019) (citation and punctuation omitted). "The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel." *Mann v. State*, 276 Ga. App. 720, 722 (624 SE2d 208) (2005) (citation and punctuation omitted). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *McAllister v. State*, 343 Ga. App. 213, 217 (3) (807 SE2d 14) (2017) (citation and punctuation omitted).

(a) *Failure to object to the state improperly placing Scales' character in evidence.*

The detective who executed the warrant for Scales' arrest testified at trial. Scales argues that his trial counsel was ineffective for failing to object to portions of her testimony that he contends improperly placed his character in evidence.

During the detective's direct testimony, the following exchange occurred:

7

Q: Now, again at this time, again, you would have still been a detective with the police department but you were not specifically assigned to work on this case; is that correct?

A: Well, I worked – no, ma'am. I just – I receive calls periodically from anonymous sources concerning criminals of – major crime criminals.

Q: Okay. All right. So you got a call about his whereabouts?

A: Yes, ma'am.

Q: All right. And now did you know at that time whether or not there had been a warrant issued for him?

A: He had warrants on him already from another state.

Scales contends that his trial counsel performed deficiently in failing to object to the detective testifying about Scales having "warrants on him already from another state" and about the people she sought being "major crime criminals." Scales argues that this testimony was improper character evidence that should have been excluded under OCGA §§ 24-4-404 (b) and 24-4-403. At the motion for new trial hearing, Scales' trial counsel testified that she did not remember why she did not object to this testimony by the detective, but that she typically would object to such testimony and that she had no trial strategy reason for wanting him to be referred to as a criminal or as a person who had warrants from another state.

We need not consider whether counsel performed deficiently in failing to object to the detective's testimony, because Scales has not shown that he was

8

prejudiced. Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hardeman v. State*, 281 Ga. 220, 221 (635 SE2d 698) (2006) (citation and punctuation omitted). Overwhelming evidence of Scales' guilt was presented at trial, and this evidence would have been presented to the jury regardless of the alleged deficiency of counsel asserted by Scales. So we find no reasonable probability that, but for the alleged deficiency, the trial would have resulted in a different outcome. See id. at 221-222; see also *Glass v. State*, 289 Ga. 542, 548 (6) (c) (712 SE2d 851) (2011) (finding defendant could not demonstrate prejudice from counsel's deficient performance in light of overwhelming evidence substantiating his guilt).

(b) *Failure to object to statements by prosecutor in closing argument.*

(i) *Reference to Scales' right to appeal.*

Scales also contends that his trial counsel performed deficiently in failing to object when the prosecutor, in closing argument, improperly referred to Scales' right to appeal. Scales is referring to the following statement by the prosecutor in closing argument after she mentioned the plea deals that Cleveland Gary and Tevin Gary received:

9

Plea bargaining in our system is a necessary part of the process. It goes on every single day. . . . You can look – as a matter of fact, today I believe that the individual Ariel Castro, who was accused of holding the three women hostage for ten years, charged with aggravated murder, rape, among 700 counts is pleading guilty. Some may say, well, he's caught either way, why in the world would the state let him plead guilty? You know, it's a necessary part of the system. You do it for a lot of reasons. You could say the victims didn't want a trial, finality, don't appeal, you know, cost. Those are the secrets, those are the things that people don't really want to talk about, but it's a part of the system. It happens. You may not like it, but it happens.

At the motion for new trial hearing, Scales' trial counsel testified that she would not necessarily have associated this statement by the prosecutor with Scales' right to appeal. Scales conceded at the motion for new trial hearing that the prosecutor did not make any reference to Scales having a right to appeal, but he contends that the prosecutor clearly implied that Scales would appeal if found guilty. We reject Scales' characterization of the statement by the prosecutor as a reference to Scales' right to appeal. Furthermore, we do not agree that the statement implied Scales would appeal if found guilty. Consequently, an objection by trial counsel on this basis would have had no merit. "Failure to make a meritless objection cannot support a claim of

ineffective assistance." *Watson v. State*, 303 Ga. 758, 763 (3) (814 SE2d 396) (2018). Thus, Scales has not established ineffective assistance of counsel on this basis.

(ii) *Suggestion that evidence relevant to Scales' guilt being withheld.*

Scales also contends that his trial counsel performed deficiently in failing to object when the prosecutor, in closing argument, suggested that evidence relevant to his guilt was being withheld from the jury. Scales is referring to the following statement by the prosecutor:

> And I will submit to [you that] if you – if you buy for one minute the argument that it's not fair, he should – why did he – why did [the Gary brothers] get the deal and he don't? I will be more than happy to answer that for you. It's not appropriate for me to answer it for you here in trial, but I'll be more than happy to answer it for you after this case is concluded.

At the motion for new trial hearing, trial counsel testified that she saw no basis for an objection to this statement and did not think that the prosecutor was referring to evidence "being withheld, just that she could not go into the deal." Trial counsel's reasoning and her decision were not "patently unreasonable," so counsel did not perform deficiently when she elected not to object on this basis. See *Smith v. State*, 296 Ga. 731, 735-736 (2) (b) (770 SE2d 610) (2015) (citations omitted). We

11

recognize the rule that "a lawyer shall not assert a personal opinion as to the justness of a cause[.]" *Metts v. State*, 270 Ga. 481, 484 (4) (511 SE2d 508) (1999). Nonetheless, even if trial counsel performed deficiently by failing to object to the prosecutor's reference to fairness, Scales has not shown a reasonable probability that, but for the alleged deficiency, the trial would have resulted in a different outcome. *Glass*, 289 Ga. at 548 (6) (c).

(c) *Cumulative prejudice.*

We conclude that the cumulative prejudice from any deficiencies assumed in Division (2) (a) and (b) "do not create a reasonable probability that the result of the proceedings would have been different in the absence of the deficiencies alleged." *Turner v. State*, __ Ga. __, __ (2) (d) (__ SE2d __) (Case No. S20A0247, decided April 20, 2020).

*Judgment affirmed. Miller, P. J., and Mercier, J., concur.*